1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

✓ FILED
  LODGED
✓ ENTERED
  RECEIVED

JUL 3 0 2002

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY
DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

BALLARD CANAL CO., INC. d/b/a
BALLARD MILL MARINA,

     Plaintiff,

     v.

THE NORTHLAND, OFFICIAL NO.
606189, *in rem*, and NORTHLAND
FISHERIES, INC., *in personam*,

     Defendants.

IN ADMIRALTY

CASE NO.  C02-473W

ORDER GRANTING SUMMARY
JUDGMENT FOR PLAINTIFF

I

This is an admiralty action brought by plaintiff Ballard Canal Company, Inc., for collection of unpaid moorage fees against the fishing vessel the NORTHLAND and its corporate owner, Northland Fisheries, Inc. (NFI).[1] The vessel has been arrested. This matter comes before the court on plaintiff's motion for summary judgment. Defendants admit liability, but contest the amount of fees owed.

---

[1] Taku Marine, AK, has also filed a claim against the NORTHLAND. (*See* Doc. 11.) It recently submitted a Complaint in intervention, but did not accompany that with a motion and proposed order, as required by W.D. Wash. Local Admiralty Rule 131(a). This order does not address any claim held by Taku Marine.

ORDER GRANTING
SUMMARY JUDGMENT
PAGE – 1

1    Pursuant to the consent of the parties, the United States Magistrate Judge exercises

2    jurisdiction under 28 U.S.C. § 636(c). In addition, although this case sounds in admiralty, in

3    accordance with lease provisions, Washington State law governs all substantive issues unless

4    otherwise noted. Having reviewed the parties' summary judgement papers and the remaining

5    record, plaintiff's motion will be granted for the reasons given herein.

6                                                    II

7    On July 18, 1997, NFI entered into a commercial lease with plaintiff to moor the

8    NORTHLAND at the Ballard Mill Marina, owned and operated by plaintiff. (*See* Doc. 17 at

9    Ex. A.) The lease was for an initial term of one month, and provided that it would continue on

10   a month-to-month basis until termination by either party. (*See id.*) In addition, the lease

11   specified a monthly rent of $1640.00. Written notations in the margins of the lease indicate

12   that the monthly rate was based on a vessel-length of 205 feet. (*See id.*)

13   Sometime after this lease was entered into, NFI began to fall behind on the monthly

14   moorage payments. (*See* Doc. 16.) This delinquency eventually led to the signing of a

15   "Memorandum of Agreement" on December 14, 1998, in which NFI agreed to a specific

16   payment schedule for money owed to plaintiff, and reiterated the $1640 per month lease

17   amount. (*See* Doc. 17 at Ex. B.) This agreement was signed by a lower-level employee of NFI,

18   characterized by defendant as a "temporary bookkeeper." (*See* Doc. 25 at 3.)

19   NFI made several more payments after that agreement, but again became delinquent.

20   (*See* Doc. 17 at 3.) As a result, plaintiff placed a lien on the NORTHLAND, and brought this

21   action. (*See* Doc. 1.)

22                                                   III

23   In its summary judgment motion, plaintiff asserts that it is owed $53,755.65 in moorage

24   fees and interest through March 27, 2002, with prejudgment interest accruing at the rate of

25   $16.87 per day. (*See* Doc. 16.) Defendants argue that the amount of fees is overstated. They

26   ORDER GRANTING
     SUMMARY JUDGMENT
     PAGE – 2

1    contend, in the main, that the monthly lease amount was inflated due to a mistaken assumption

2    regarding the length of the NORTHLAND. Plaintiff contests that point, and notes that

3    defendants admitted the amount of damages by filing to respond timely to requests for

4    admissions. (*See* Doc. 22.) Defendants have moved to withdraw those admissions. The issue

5    of whether defendants are bound by their silent admissions will be first addressed.

6                          REQUEST FOR ADMISSIONS

7         Under Federal Rule of Civil Procedure 36, parties must respond within 30 days to written

8    request for admissions. If no objection or answer is made, the matter relating to the request is

9    deemed admitted. For requests that are served by mail, an additional three days is added to the

10   prescribed period pursuant to Rule 6(e).

11        Plaintiff contends that it mailed its First Requests for Admissions on May 10, 2002.

12   Defendants present no evidence contradicting this. (*See* Doc. 22) By the court's calculation,

13   defendants had until June 12, 2002, to respond, which they failed to do. (*See* Doc. 27). Instead,

14   defendants served their responses on June 14, 2002. As a result, plaintiff is correct that their

15   requests were deemed admitted by operation of Rule 36.

16        Defendants request that the court permit withdrawal or amendment of the admissions.

17   (*See* Doc. 27 at 2-3.) Under Rule 36(b), the court has the power to permit withdrawal or

18   amendment of admissions when "the presentation of the merits of the action will be subserved

19   thereby and the party who obtained the admission fails to satisfy the court that withdrawal or

20   amendment will prejudice that party in maintaining the action or defense on the merits."

21        Defendants have shown good cause for withdrawal, and plaintiff has not shown that it

22   will be prejudiced by such action. Failure to grant withdrawal would also subserve "the

23   presentation of the merits of the action." Accordingly, to enable the court to address the merits

24   of defendants' defenses to the motion for summary judgment, the request to withdraw or amend

25   the admissions will be granted, and defendants' belated responses substituted.

26   ORDER GRANTING
     SUMMARY JUDGMENT
     PAGE – 3

1

SUMMARY JUDGMENT MOTION

2    Summary judgment is proper only where "the pleadings, depositions, answers to
3    interrogatories, and admissions on file, together with the affidavits, if any, show that there is no
4    genuine issue as to any material fact and that the moving party is entitled to judgment as a
5    matter of law." Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48
6    (1986). The moving party has the burden of demonstrating the absence of a genuine issue of
7    fact for trial. *See Anderson*, 477 U.S. at 257. Genuine factual disputes are those for which the
8    evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Id.* at
9    248. Material facts are those which might affect the outcome of the suit under governing law.
10   *See id.* "The court must not weigh the evidence or determine the truth of the matter but only
11   determine whether there is a genuine issue for trial." *Crane v. Conoco, Inc.*, 41 F.3d 547, 549
12   (9th Cir. 1994) (citing *F.D.I.C. v. O'Melveny & Meyers*, 969 F.2d 744, 747 (9th Cir. 1992),
13   *rev'd on other grounds*, 512 U.S. 79 (1994)).

14   Plaintiff argues that there exists no genuine issue of fact regarding the liability for and the
15   amount of unpaid moorage fees. Defendants do not dispute liability for moorage fees, but
16   question the amount and nature of these fees. Defendants contend: (1) That the monthly lease
17   amount of $1640 was based on an incorrect measurement of the NORTHLAND, the vessel
18   being 186 feet long – not the 205 feet referenced in the original July 1997 lease; (2) That the
19   rate agreed to in the July 1997 lease was a "temporary" rate, and the subsequent monthly rate
20   should have been lower; (3) That the subsequent December 1998 "Memorandum of
21   Agreement" was invalid, as it was signed by a temporary bookkeeper, who had no authority to
22   bind NFI; and (4) That the late fees charged by plaintiff are not referenced in the original lease
23   and were not agreed to by NFI, and that the interest on the balance owed was improperly
24   calculated.

25

26   ORDER GRANTING
     SUMMARY JUDGMENT
     PAGE – 4

1   Defendants' contentions will be addressed in order. For reasons discussed *infra*, the court

2   finds that those contentions are insufficient to defeat summary judgment.

3   <u>Mutual Mistake of Fact</u>

4   Defendants' first contention is that the monthly lease amount was based on a mutual

5   mistake of fact regarding the NORTHLAND's length. Defendants contend that the

6   NORTHLAND is 186 feet, while the monthly lease amount was based on a length of 205 feet.

7   Mutual mistake as to an essential element of a lease is a permissible defense. *See Public*

8   *Util. Dist. No. 1 v. WPPSS*, 705 P.2d 1195, 1203 (Wash. 1985). Defendants bear the burden of

9   proof regarding that defense. *See Keierleber v. Botting*, 466 P.2d 141, 144 (Wash. 1970). It is

10  unclear whether defendants have raised the defense to avoid the lease and relegate plaintiff to

11  quantum meruit recovery, or to obtain the equitable remedy of reformation. Avoidance is

12  appropriate if the parties were mutually mistaken regarding a basic assumption necessary for a

13  meeting of the minds to have occurred. The party who seeks avoidance must also be found to

14  not have borne the risk of mistake through conscious disregard. *See Public Util. Dist. No. 1*,

15  705 P.2d at 1204; & RESTATEMENT (SECOND) OF CONTRACTS § 152 (1979). Reformation is

16  appropriate if the parties had reached a meeting of the minds regarding essential elements, but

17  the agreement was incorrectly expressed in writing. *See Williams v. Fulton*, 632 P.2d 920

18  (Wash. App. 1981); & RESTATEMENT (SECOND) OF CONTRACTS § 155 (1979). The party

19  seeking reformation must provide clear, cogent and convincing evidence of mistake, and must

20  not have borne the risk of mistake through a failure to negotiate in good faith. *See Rolph v.*

21  *McGowan*, 579 P.2d 1011, 1014 (Wash. App. 1978); & RESTATEMENT (SECOND) OF

22  CONTRACTS, § 157 (1979).

23  Defendants have not presented sufficient evidence to create a triable issue regarding their

24  defense of mutual mistake to support a remedy of avoidance or reformation. For the reasons

25  that follow, defendants' evidence does not support a reasonable inference that at the time of

26  ORDER GRANTING
    SUMMARY JUDGMENT
    PAGE – 5

1   assent the parties were mutually mistaken regarding the basis for the monthly moorage amount,

2   or that they acted without fault.

3        In support of its summary judgment motion, plaintiff presented evidence in a declaration

4   from Jonathan Ives that it based its monthly moorage rate for the NORTHLAND on the vessel's

5   actual overall length.  To determine the NORTHLAND's actual overall length, Mr. Ives avers

6   that he relied on the book the FISHING VESSELS OF THE UNITED STATES.  That book lists the

7   NORTHLAND's documented length as 186.1 feet and its actual length as 205 feet.  Mr. Ives

8   also avers that NFI's authorized agent who negotiated and signed the lease, Bill McVay,

9   confirmed the NORTHLAND's actual overall length.  In response, defendants presented a

10  Coast Guard certificate that states a documented length of 186.1, and an affidavit by Mark

11  Maring that "[i]n [his] experience, moorage is calculated on the documented length of the

12  vessel."  (Doc. 26 at 2.)

13       Defendants' opposition fails to present a genuine factual dispute that the parties' were

14  mutually mistaken regarding the factual basis for the calculation of the monthly moorage

15  amount.  Plaintiff has presented the only evidence regarding the parties' expectations at the

16  time of lease formation.  The court notes that defendants did not submit an affidavit from Mr.

17  McVay who negotiated and signed the lease for NFI.  The undisputed evidence related to the

18  crucial period of lease formation indicates that the parties based the monthly moorage amount

19  on the NORTHLAND's actual overall length of 205 feet, as reflected in a reference book.  If

20  there was any mistake as to the proper factual basis for calculating moorage, it was unilateral,

21  held only by Mr. Maring.

22       Furthermore, assuming that there is a genuine factual dispute regarding the actual length

23  of the NORTHLAND and a mutual mistake regarding that fact occurred during lease formation,

24  NFI is not entitled to reformation or avoidance due to their fault.  NFI should bear the risk of

25  mistake due to its ignorance of the actual length of its own vessel at the time of negotiation.

26  ORDER GRANTING
    SUMMARY JUDGMENT
    PAGE – 6

1  NFI and plaintiff were on equal footing during lease negotiation. The court must assume that

2  all material terms expressed in the lease were negotiated in good faith. If NFI believed that the

3  reference book contained an inaccuracy regarding the NORTHLAND's actual length, it

4  possessed the information – or could have easily obtained the necessary information – to press

5  its case for lower moorage. The court also notes that NFI performed under the terms of the

6  lease without objection for a number of years.

7     Accordingly, defendants have failed to present a triable issue regarding their defense of

8  mutual mistake.

9  Temporary Moorage Rate

10    The defendants' second contention is that the rate agreed to in the lease was temporary,

11  and long-term moorage rates are customarily lower than temporary rates. (*See* Doc 26.)

12  Defendants rely on a statement by Mark Maring, an officer of NFI, that in his experience,

13  "moorage is calculated on the documented length of the vessel," and that "[t]he per foot charge

14  for short-term moorage is greater than the charge for long term moorage." (*See id.*)

15    While the lease does have a handwritten notation that says "30 Day Temp," defendants'

16  claim that the long-term moorage rate should be lower is belied by several key facts. First, the

17  lease specifically indicates that it will continue on a month-to-month basis unless one party

18  should choose to terminate. Defendants have presented no evidence that would indicate that the

19  lease was ever terminated, and that any provisions other than those in the lease should govern

20  this dispute. Second, at no time during the period of moorage does it appear that defendants

21  contested the moorage rate of $8.00/foot.

22    Accordingly, defendants' second contention does not raise a triable issue.

23  Lease and Memorandum of Agreement Voidable

24    Defendant's third contention is that the lease cannot be enforced because it was not

25  signed by the plaintiff. Furthermore, defendants argue that the subsequent "Memorandum of

26  ORDER GRANTING
   SUMMARY JUDGMENT
   PAGE – 7

1    Agreement" is void because it was only signed by a "temporary bookkeeper," who had no

2    authority to sign such an agreement. (*See* Doc. 26 at 3.)

3         Defendants initially argue that the underlying lease is voidable because it was not signed

4    by a representative from plaintiff. (*See id.*)  It is true that the only signature appearing on the

5    document is that of an NFI representative.  However, this is sufficient to make the lease legally

6    binding as to the defendant.  First, a lease need only be signed by the party against whom

7    enforcement is sought. *See* R.C.W. § 19.36.010; & *J. A. Jones Const. Co. v. Plumbers and*

8    *Pipefitters Local 598*, 568 F.2d 1292, 1295 (9th Cir. 1978).  Second, the lease in this case was a

9    month-to-month agreement, and as such does not fall within the statute of frauds. *See* R.C.W. §

10   19.36.010.  The fact that the lease was not signed by the plaintiff to this action is therefore

11   immaterial.

12        As to defendants' second argument, the Memorandum of Agreement, if valid, certainly

13   serves as proof that NFI owed plaintiff a substantial amount of money in past due moorage

14   fees, and that the monthly moorage rate was indeed $1640. (*See* Doc. 17 at Ex. B.)  Plaintiff's

15   claim, however, is based on the underlying terms of the lease.  Even if the Memorandum of

16   Agreement lacks legal effect, defendants have presented no evidence to indicate that the

17   underlying lease is invalid.  As a result, the court finds it irrelevant whether the subsequent

18   memorandum is a legally binding document.

19        Accordingly, defendant's third contention does not raise a triable issue.

20                              Late Fees and Interest Payments

21        Defendants' fourth contention is that the late fees charged by the plaintiff were not a part

22   of either the original lease or the "Memorandum of Agreement," and cannot be subsequently

23   charged. (*See* Doc. 25.)  Furthermore, defendants argue that the interest payments charged by

24   plaintiff are nonsensical, and demonstrate a dispute of fact that should preclude summary

25   judgment. (*See id.*)

26   ORDER GRANTING
     SUMMARY JUDGMENT
     PAGE – 8

1        The late fees were not part of the original lease, but were later imposed by the plaintiff.

2   (*See* Doc. 29 at Ex. B.) Plaintiff has provided evidence that all tenants of Ballard Mill Marina

3   were notified of this change, effective April 1, 2001. (*See* id.) NFI accepted that additional

4   term of the lease by continuing to perform. There is every indication that NFI was not only

5   aware of the late fees, but willingly paid them. (*See* Doc. 17 at Ex. C.) Defendants have

6   presented no evidence that these late fees were ever disputed. Defendants are therefore

7   responsible for late fees from April 1, 2001.

8        Furthermore, the interest payments, while admittedly presented in a confusing manner,

9   are consistent with the 15 percent lease provision. (*See id.*) The interest calculations are based

10   on differing periods of time, but the court finds all the calculations to be accurate.

11        Accordingly, defendants' fourth contention does not raise a triable issue.

12   RULE 11 SANCTIONS

13        Plaintiff also requests that the court impose sanctions on the defendants under Federal

14   Rule of Civil Procedure 11. In general, Rule 11 provides for sanctions when a filing is

15   frivolous, legally unreasonable, or without factual foundation, or is brought for an improper

16   purpose. *See Simpson v. Lear Astronics Corp.,* 77 F.3d 1170 (9th Cir. 1996). Defendants'

17   opposition was not clearly frivolous, and cannot be said to have been brought for an improper

18   purpose. Rule 11 sanctions are therefore unwarranted, and plaintiff's request will be denied.

19   IV

20        In light of the foregoing, the court ORDERS as follows:

21

22        (1) Defendants' request to withdraw Rule 36 admissions is GRANTED;

23        (2) Plaintiff's request for Rule 11 sanctions is DENIED;

24        (3) Plaintiff's motion for summary judgment is GRANTED;

25

26   ORDER GRANTING
       SUMMARY JUDGMENT
       PAGE – 9

1

(4) There is no just reason for delay of judgment as to the claim of plaintiff. The Clerk

2

shall enter judgment for plaintiff and against defendants in the amount of $53,755.65, plus

3

interest from the March 27, 2002, to the date of judgment at the rate of $16.87 per day. *See*

4

Fed. R. Civ. P. 54(b);

5

(5) This action shall remain pending for 30 days to permit Taku Marine to file a proper

6

motion for intervention and proposed order in accordance with Local Admiralty Rule 131(a). If

7

Taku Marine files a timely motion and that motion is granted, this action will proceed as to

8

Taku Marine's claim against defendants; and

9

10

(6) The Clerk shall send a copy of this Order and the Judgment to all counsel of record.

11

DATED this _30_ day of July, 2002.

12

13

John L. Weinberg
United States Magistrate Judge

14

15

16

17

18

19

20

21

22

23

24

25

26

ORDER GRANTING
SUMMARY JUDGMENT
PAGE – 10